*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HADLEY/LEWIS/MAY, Minors.

UNPUBLISHED
June 16, 2022

No. 357782
Wayne Circuit Court
Family Division
LC No. 2017-001468-NA

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

ML had controlled substances in her system at birth, so the Department of Health and Human Services removed her and MH from respondent's care in August 2017, shortly after ML's birth. The trial court ordered respondent to comply with a service plan that included parenting classes, therapy, and drug screens. Respondent did not comply with her service plan and gave birth to MM in December 2018. Like ML, MM also tested positive for controlled substances at birth. The trial court terminated respondent's parental rights in June 2021, under MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondent argues that the trial court erred by doing so because termination was not in the children's best interests. We affirm.

Respondent had her service plan for nearly four years before her parental rights to the children were terminated. Despite this extensive amount of time, the foster-care worker opined that respondent was no more capable of caring for the children in 2021 than she was when ML and MH were removed from her care in 2017. Throughout the long history of this case, respondent missed 145 of 162 drug screens, and only eight of the screens she did take were negative. Additionally, respondent was repeatedly terminated from therapy and parenting classes for poor attendance, resulting in at least 21 rereferrals. Although respondent did participate in therapy, her therapist opined that respondent did not benefit from it. As for respondent's interactions with the children, she attended just over half of the visits and had not visited with them in person since November 2020; nevertheless, she did have a bond with the children. Respondent additionally failed to obtain verified employment or suitable housing throughout the pendency of this case. All of these factors prompted the Department to file a petition to terminate respondent's parental rights.

-1-

The trial court held a two-part termination hearing in this case. The first hearing addressed statutory grounds to terminate respondent's parental rights, and the second one addressed their best interests. The trial court held a separate best-interests hearing because ML and MM were in relative placement with their maternal grandmother; MH was placed with her father. Respondent testified that she did not have a substance-abuse problem and that she needed only a few weeks to complete her service plan. The foster-care worker and the trial court disagreed and the trial court terminated respondent's parental rights, specifically concluding that termination was in the children's best interests despite the relative placement of ML and MM. This appeal followed.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling on best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "[T]he court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. When the trial court makes its best-interests determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. In cases involving multiple children, the trial court must determine each child's interests individually. *In re Olive/Metts*, 297 Mich App at 43-44. But a trial court is not required to make redundant best-interest findings for each child when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716.

As an initial matter, respondent argues that the trial court failed to consider the children's relative placements. Although respondent is correct that the trial court must consider relative placement and that it weighs against termination, respondent's argument is not supported by the record. The trial court explicitly considered the relative placements of ML and MM with their maternal grandmother, and MH was not in relative placement with her father because parents do not qualify as relatives. See MCL 712A.13a(1)(j); *In re Schadler*, 315 Mich App at 413.

Turning to the remainder of the best-interests analysis, the record supports the trial court's determination. Respondent had almost four years to complete her service plan, but she failed to do so. Respondent claimed that she no longer had a substance-abuse problem, but the Department was unable to verify these claims because respondent failed to complete her required drug screens. Respondent's attendance with therapy and parenting classes was also so poor throughout the proceedings that she was rereferred to them at least 21 times. Despite these repeated referrals, the only service respondent appeared to participate in consistently was therapy, which her therapist

stated respondent did not benefit from. Additionally, respondent missed about half of her visits with the children and had not seen them in person since November 2020. Although respondent had a bond with the children, that bond was outweighed by her failure to participate in or benefit from her service plan despite almost four years to do so. Given the length of this case, the foster-care worker's testimony that respondent was no more capable of caring for the children at the time of the hearing than when ML and MH were removed from her care in 2017 is particularly compelling. Respondent had an extensive amount of time to show that she could care for the children, but she failed to do so. Respondent's arguments that she needed more time to demonstrate that she could care for the children are unconvincing given that she demonstrated little progress throughout the long history of this case. Instead, given the length of this case, the children need permanency and stability.

Respondent's lack of progress with her service plan outweighs her bond with the children and the relative placements of ML and MM. Thus, the trial court did not err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle